J. S. Smith, Jr., & Co., Plaintiffs in Error, vs. Uriah Bowden, Sheriff, et al., Defendants in Error.

Judgments entered in the Circuit Court Clerk's office on the same rule day under the practice act of 1873 (chapter 1938) are to be satisfied pro rata out of the proceeds of property upon which writs of attachment have been levied, though such writs were issued and levied at different times or on different days anterior to such. judgment.

Writ of Error to the Circuit Court for Duval County.

The facts of the case are stated in the opinion.

*Doggett & Buckman* for Plaintiffs in Error.

The statute provides two methods of proceeding—one by *original* attachment, which is the foundation of the suit ; the other is *ancillary* to the action brought. Thompson's Digest, 367, §§1–6 ; 369, §§1–2 ; Budd vs. Long, 13 Fla., 289 ; Simpson vs. Knight, 12 Fla., 149 to 151.

Attachment is still *ancillary*, though sued out at same time with summons *ad respondendum*. Loring vs. Wittich, 16 Fla., 617–18.

This suit was of the latter kind, the attachment being issued contemporaneous with filing of *præcipe* for summons *ad respondendum*, and issuance of same.

The judgment from which error is taken directed a pro rata distribution between all creditors " obtaining judgments at the same term."

All these attachments were returnable out of term—to a " rule day"—and all said judgments were entered on " rule day."

Is a " rule day " a term of court within the meaning of the statute ?

The act regulating attachments was passed in 1833, when

no *judgment* could be taken out of a *regular term of court.*
Act 1833, ch. 664, §16.

The act of 1873, chap. 1938, §5, provides that the *first Mondays* of each month court shall be deemed to be in session at the Clerk's office, for the return of writs; and for the entry of such judgments, by default, as provided by the rules, &c.

Does this act constitute a " Rule Day " a *term of court ?* and if so, within the meaning of the statute of attachments of 1833 ?

If not, then judgments obtained on rule days are not obtained at a term of court; and are not affected by the statute requiring judgments in attachment to be satisfied as other judgments obtained at the same *term of court.*

All judgments obtained at the same term of the court are to be satisfied pro rata out of any moneys raised from the sale of defendant's property.

Act January 14th, 1828, Laws of Florida, sec. 25. See section 85, Laws 1828. This section of said act however we hold to be repealed by subsequent legislation, page 138, act February 13, 1831, which leaves judgments to be satisfied as at common law and British statutes as received by us, which gives to the most diligent creditor the preference.

Sec. 1—Attachment: Service of a writ of attachment shall not operate to dispossess the tenant of any lands or tenements, &c., but judgments obtained in attachment shall be satisfied in the same manner as other judgments obtained at the same term, &c. McC. Dig., 114–18, same Laws of Fla., 1833–9.

Attachment judgments obtained the same term to be satisfied pro rata out of judgments against garnishees.

McC. Dig., 116–29, amending last clause of above as to

garnishment. Laws 1833–15, same as act 12, 28, 24, Laws of Fla., Vol. 1, 192.

Section one above is the only law applying to attachment generally, subsequent section and amendment above refer solely as to proceeds realized by garnishment.

Statute regarding attachment does not apply to personal property but solely to *real* property, except in so far as that personal property garnished.

Carefully examine statute in 3 Fla., 17–3, the construction here erroneous however.

Judgment by default is lien upon nothing.

Final judgments are a lien upon real property from date of rendition. Digest, 618–1, 3 Fla., 176, Act February 13, 1831.

No lien on personal property is created until the officer has received the execution, when it becomes a lien and binds personal property from that date. 2 Tidd Pr., 931; 4 Fla., 133–4; 8 Am. Dec., 321, 348; Am. Dec., 373, and note; 2 Fla., 439; 18 Am. Dec., 321, 75, 27; 8 Dec., 221, 24–454, 753, 11, 755, 722, 25–109; 1 U. S. Dig., 6–103, 1340, 1341–3.

Statute cannot, therefore, apply to *personal* property (as to the judgment obtained same term of the court) as judgments obtained at the same term of the court are never (as to personal property) satisfied pro rata, he who gets out the first execution and puts it in the hands of the officer obtains priority, even when issued on junior judgments, and it only becomes a lien from that time. McC.'s Dig. Must endorse time of receipt of execution. 2 Fla., 429; 1 Ill., (Breese) 290; 39 Mo., 44; 1 Dig. U. S., Vol. 5, 103, 106, 1340, 1400; 8 Am. Dec., 348; 11 Am. Dec., 722, 765.

While a *judgment* lien is complete as to *real* property when the same is rendered. 3 Fla., 11.

Statute does not make judgment a *lien* on *personal* prop-

erty without execution received by officer. *Judgment* is of no effect as to that, and attachment statute nowhere attempts to make judgment a lien on personal property and must be strictly construed; the common law as received here is not to be overturned by implication. Act February 13, 1831, 1 Fla. Laws.

Hence judgments as to *personal* property obtained at the same term to be satisfied according to the statute in attachment must be satisfied according to priority of *execution*, and without the statute according to common priority of attachment. Drake on Attachment, 269.

Statute therefore not applicable to *personal* property, and attachments take precedence and are entitled to priority in order of point of time of service, as at common law. Drake on Attachment, 231 and note 1, 260-1.

Attachment is here used as an ancillary process and creates a charge on attached property, which continues to attachment creditor to await judgment in *real* and judgment and *execution* on *personal* property. 14 Fla., 187; 9 Fla., 61; Foster's Case, 2 Story, R. 131; Fisher vs. Vose, 3 Rob., (La.) 457; Drake Attach., 36 and 228; Bellows vs. Peck, 2 Story, 428; Hale vs. Cummings, 3 Ala., 398.

The statute not applying, this attachment being first in this case is first in right and is to be satisfied in full. Drake on Attachment, 260-1.

Yet supposing or omitting statute applicable to personal property it can only be applicable so as to mean on judgments obtained at same term as to *real* property and judgment and *execution* as to *personal* property.

And if so, if applicable to personal property, it must be held that the statute puts all attachment liens on an equal footing and allows no priority of attachment; such lien must await judgment in case of *real* property, and *execution* in case of *personal* property to be perfected. 14 Fla., 197-8.

The statute does not attempt to regulate such liens, and judgment and execution liens remain to be acquired as before. Yet we raise the question (if the statute is applicable in any sense to *personal* property), if it contemplates or includes successive attachments, or *anything* but attachments simultaneously levied.

Execution is absolutely necessary to perfect even attachment lien, and *personal* property can only be affected by *execution.* Drake on Attachment, 262 and 228 ; 23 Pick., 465 ; 46 Mo., 31

Lien of attachment is merged in the judgment. Drake Attach., 224.

Hence in case of attaching creditors, he who by diligence first obtains *execution* and gets it into the hands of the officer, and even (if both judgments obtained at the same term as to *personal* property) he is to be satisfied in full and not pro rata.

Where two judgments or executions have no priority over each other as liens, priority may be gained by activity and diligence, and he who first begins to execute obtains priority over creditors equally meritorious but less diligent. 5 Am. Dec., 346, note 344; Freeman on Ex., 196, 203 ; 8 Johns., 247; 15 Howard (U. S.), 189; 9 Iowa, 414 ; 29 Ill., 24; 11 John., 288 ; 2 Wat., 303 ; 14 N. Y., 95 ; 16 Ala., 232; Drake, 262.

Issuance of execution and getting same to officer ahead of others is exercising that diligence in cases where property or proceeds are found all in his hands (under attachment) in same suit, (the attachment liens being equal) as mere receipt of execution operates as levy on property already in officer's hands. 8 Am. Dec., 373, and note and cases cited ; 41 Ill., 65 ; 39 Mo., 49.

When money is in the hands of Sheriff, no levy is necessary ; delivery of *fi. fa.* in such cases to him is tantamount

to levy. 4 Met., 137 ; Freeman on Ex., 135, 267; 1 Hill, 559 ; 4 Hill, 160 ; 17 Johns., 116 ; 10 Ad. and El., 570 ; 1 Bart., 542 ; 16 Mass., 181.

If two or more writs of *fi. fa.* be delivered to Sheriff, he should execute first received, and act at his peril in not doing so. Tidd. Prac., 193, 933 ; Freeman Ex., 251 ; 1 Ray., 554 ; 12 M. & W., 664 ; 4 E., 525, 545 ; 1 T. Rpts., 731, 729.

If officer has two or more writs of execution in hand it is his duty to apply proceeds to oldest writ, though he may sell, or has sold under a junior writ. Freeman Ex., 196, 251, 447 ; 36 T., 59 ; 18 Johns., 311 ; 4 Cow., 461 ; 1 Gil., 636 ; 5 Cow., 390 ; 5 Bart., 365.

Between different jurisdictions, or process from different courts, the first court acting in the premises obtains priority. Drake, 261, 230, and note.

Post vs. Carpenter, 3 Fla., in the light of the foregoing authorities, does not properly construe the statute, especially in so far as personal property is concerned, for if the statute be appliccable it must be read   *   *   *   " pro rata as to execution placed in the hands of the officer *at the same term*, as *executions* only so placed are liens, not   *   *   * pro rata as between *judgments obtained at same time.*"

*Hartridge & Young* for Defendants in Error.

MR. JUSTICE RANEY delivered the opinion of the court.

This is a controversy as to the manner in which the proceeds of personal property, levied upon under several writs of attachment against the partnership effects of Dowling & Coxe, should be applied to the payment of judgments recovered against such partners.

The attachment writ in the suit of the plaintiffs in error issued from Duval Circuit Court at noon of August 8th,

1883, and was levied on certain articles immediately before 2 o'clock P. M. of the same day, it being ancillary to an action of assumpsit in which the summons *ad respondendum* was issued and served the same day. On the same day but afterwards the Sheriff received another writ of attachment at the suit of Thurber & Co., and on the 9th, one at the suit of Chas. F. Powers, and on the 11th one at the suit of Reedy & Son, and one in favor of Williams & Co., and another in favor of McAlpin & Co., and on the 18th one in favor of Allen & Co., and on the 21st one in favor of Kerr & Co., as well as one in favor of Paret & Co., and one at suit of Meinhardt Bros. & Co., and on the 23d another in favor of Powers, as well as one in favor of Einstein & Sons, and on the 24th day of the same month one at the suit of Wood, Rittenhouse & Bro, and on August 9th one in favor of Wightman & Christopher. All these writs issued from Duval Circuit Court, and each was executed; on the day of its issue by levying on the same property which that in favor of the plaintiffs in error had been levied on, as well as upon other property of the defendants, Dowling & Coxe. The levy of the writ of the plaintiffs in error was afterwards extended to the property which it did not at first cover.

On the 29th of August orders for the sale of the goods as perishable property were made on application of each of the following plaintiffs in their respective suits, viz: Smith, Jr., & Co., Thurber & Co., Powers, Williams, Paret & Co., Meinhardt Bros. & Co., and Einstein & Sons. The goods were sold accordingly, in September, and those first levied on at the suit of Smith, Jr., & Co., produced $380, and all the goods, including those first referred to, brought $2,572.04, the expenses being $273.85, and leaving a balance of $2,299.19.

Plaintiffs in error entered a default and final judgment

for $371.19 and costs, against Dowling & Coxe, on October 1st of the same year (it being a rule day) in the Circuit Court Clerk's office, and on the same day several judgments were entered against Dowling & Coxe in other of the attachment suits for sums which in the aggregate, largely exceed the amount realized from the sale of the property attached. On the 11th day of October execution issued to the Sheriff in the above judgment, the Sheriff being then instructed to levy it on the proceeds of the sale then in his possession, and on the 12th of same month execution in the suit of Kerr & Co. was received by the Sheriff.

The plaintiff in error claimed that his execution should be satisfied in full as having priority over the other judgment or execution creditors. Whereas the latter contend that as their judgments were rendered on the same rule day, the moneys held by the Sheriff should be applied pro rata to the several judgments so entered.

Upon a rule against the Sheriff, Judge Foster of the 7th Circuit acting in the place of Judge Baker of the 4th Circuit, ordered that the moneys, less expenses and commissions, be applied pro rata to the " judgments obtained at the same term of the court," and plaintiffs in error being dissatisfied have brought the case here for our decision.

Under the decision of Post vs. Carpenter *et al.*, 3 Fla., 1, there can be no doubt that the moneys in question should be applied pro rata to the judgments in question had they been rendered at any ordinary term (whether regular or special) of the Circuit Court. The fact that the attachment in the case of the plaintiffs in error or in any of the actions, was ancillary to an ordinary suit begun by writ *ad respondendum*, makes no difference. Though the language of the act is " that a judgment in a suit *commenced by attachment* shall be satisfied in the same manner as other judgments obtained at the same term of the court are, or

shall be satisfied out of the lands and tenements, goods and chattels generally of the defendant in attachment," we do not think it was the purpose of the law makers to provide that a judgment in an action in which there was also a service of summons *ad respondendum* should not be subject to the same rule of satisfaction as one in which there was none. The service of a summons should have such effect no more than a voluntary appearance or a plea to the declaration. " We think," says the opinion in Post vs. Carpenter, " it was the intention of the Legislature to place judgments obtained at the same term, whether the suits in which they were obtained were instituted by attachment or ordinary summons, upon the same footing." It was certainly the intention that at least the property attached in different suits should be applied pro rata to the judgments rendered in such suits at the same term, whether or not there was service of an ordinary summons in any or all of them. The provision of the statute quoted steps in and regulates the satisfaction of such judgments, thus qualifying the effect of the provision that the service of the writ shall bind the property attached, which provision, but for the one quoted, would give a plaintiff a lien from the date of the levy, and consequently one of priority over others subsequently levied, regardless of the date of the rendition of the judgment. The provision quoted, we may also remark, anticipates where it applies any contests for priority of lien on the ground of priority in the issue of executions, if this can be at any time a serious question. Zinn, Aldrich & Co. vs. Dzialynski, 14 Fla., 187.

Prior to the practice act of 1873, (chapter 1938, approved Feb'y 24th,) common law writs issuing from the Circuit Courts were returnable to regular terms of the court and judgments could be rendered in such actions only in term. By such act, however, the first Monday in each month is

made or designated a rule day, and "on such first Monday of each month the Circuit Court shall be deemed to be *opened* and *in session* at each of the Clerk's offices for the return of writs and process; for the entry of such judgments by default as are provided for by this act, or the rules of the court now existing or which may hereafter be adopted," and also for disposing of all matters, rules, orders and interlocutory proceedings which parties may apply for, and which by the practice of the court may be entered of course, or which are granted without the special ·order of the Judge. All writs are by it made returnable to a rule day, and it declares in what cases defaults and final judgments consequent thereon may be entered, and regulates the entry of the same and provides that writs of execution upon judgments so issued may issue " after the lapse of ten days from entering the same unless otherwise ordered by the court or the Judge thereof."

The case of Burrows vs. Mickler, 22 Fla., and Stribling vs. Hart, 20 Fla., 235, are of some interest as to the effect or nature of judgments under this act, or decrees rendered in vacation. .

Though there are incidents and characteristics belonging to an ordinary term, whether general or special, which do not attach to a " session " of the court when " opened " under the above statute, yet in so far as the effect or efficiency of a judgment rendered at such a " session " upon the defendants' property, or in so far as the provisions of the attachment statutes in question, as to the satisfaction of judgments rendered at the same term, we can perceive no difference between such a " session " and an ordinary term of the court. At a term of a court the court is " opened and in session ;" these words, in so far as the power involved is concerned, mean no more nor any less than the words "in term " would mean if they had been used at the same place

in the same statute. The real purpose of the attachment acts was that judgments rendered at the same session of the court should be satisfied in the same manner, and those rendered on a rule day are as much within this purpose as those rendered at a session which we usually call a regular or special term.

The construction which we place upon the words " same term " used in the order of Judge Foster, is " same rule day," and as no judgment was rendered at any other *term*, no other construction is tenable. So construing his language, the order should be affirmed, and it will be so ordered.