JUANITA T. HOLLINGSWORTH, individually and as Administratrix of the Estate of J. N. HOLLINGSWORTH, deceased, v. ARCADIA CITRUS GROWERS ASS'N, and FLORIDA TRUST AND BANKING CO.

165 So. 369.
En Banc.
Opinion Filed June 7, 1934
On Rehearing September 2, 1935.
On Further Rehearing December 19, 1935.
Rehearing Denied February 8, 1936.

*W. D. Bell* and *John B. Singletary,* for Appellants;

*Leitner & Leitner* and *Treadwell & Treadwell,* for Appellees.

PER CURIAM.—J. N. Hollingsworth died in February, 1926, indebted to Arcadia Citrus Growers Association in the sum of $4549.17. Juanita T. Hollingsworth was duly appointed Administratrix of the estate of J. N. Hollingsworth and in March, 1928, Arcadia Citrus Growers Association reduced its claim to judgment against her as such. Florida Trust and Banking Company also held a claim against J. N. Hollingsworth at the time of his death and subsequently reduced its claim to judgment against the Administratrix.

In April, 1927, Arcadia Citrus Growers Association filed its creditors bill against Juanita T. Hollingsworth individually and as administratrix of the estate of J. N. Hollingsworth and B. F. Wells, R. O. Turner and Elmer Garner as trustees, seeking to subject the proceeds of certain promissory notes held by said trustees for the estate of J. N. Hollingsworth to the payment of its judgment. Florida Trust and Banking Company was permitted to intervene and become a party complainant to the creditors bill. A demurrer to the creditors bill was overruled, answer was filed and on final hearing the Chancellor found the Equities to be with complainants. A final judgment was entered in which the trustees were directed to pay the costs of this litigation and to appropriate the balance of the proceeds of the promissory notes held by them to the payment of complainants and intervenors judgments. The instant appeal is from that final decree.

Appellant has raised and argued many questions but the real issue presented is whether the proceeds of the promissory notes in controversy were a part of the estate of J. N. Hollingsworth, or did they belong to his wife, Mrs.

Juanita T. Hollingsworth, at the time of his death. This was a question of equitable cognizance, notwithstanding Section 3774, *et seq.,* R. G. S. of 1920, Section 5647, *et seq.,* Compiled General Laws of 1927. Benedict v. Wilmarth, 46 Fla. 535, 35 So. 84.

Mrs. Hollingsworth contends that the notes were given to her by her husband, J. N. Hollingsworth, in October, 1923, and she is supported in this by the testimony of other witnesses. There is substantial testimony to the contrary and the record shows beyond question that in 1923 when the notes were alleged to have been given to her, J. N. Hollingsworth was hopelessly involved and was indebted far beyond his ability to pay. In the face of hopeless conflicts in the testimony the Chancellor held that the notes were never given to Mrs. Hollingsworth.

In some jurisdictions voluntary conveyances against attacking creditors are considered as fraudulent *per se* but the weight of authority is that such conveyances only afford a *prima facie* or presumptive evidence of fraud which may be rebutted or explained. The latter rule has been approved in this State. Claffin v. Ambrose, 37 Fla. 108, 19 So. 628, Russ v. Blackshear, 88 Fla. 573, 102 So. 749. In either event the burden is on the one claiming the advantage of the voluntary conveyance to prove that the grantor had other property sufficient to discharge his obligations. 12 R. C. L., Section 108, p 593, Sec. 174, p. 668.

There is ample support in the record for the finding and judgment of the Chancellor. He was familiar with the properties involved and the witnesses, including the parties to the litigation. It is conclusively shown that for long prior to and subsequent to 1923 J. N. Hollingsworth was in no position to make a donation of any of his properties.

The judgment below is consequently affirmed.

Affirmed.

DAVIS, C. J., and WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur.

## ON REHEARING.

PER CURIAM.—By an opinion filed herein on June 7, 1934, the final decree of the Circuit Court was affirmed. Thereafter a petition for rehearing was allowed and a rehearing and reargument had before the Supreme Court *en banc* on October 10, 1934. The case is now before the Court for decision on rehearing.

Upon rehearing, the Supreme Court finds itself equally divided in opinion as to whether the decree of the Circuit Court should be affirmed or reversed. Mr. Chief Justice WHITFIELD, Mr. Justice TERRELL and Mr. Justice DAVIS are of the opinion that the judgment of affirmance of this court previously entered, should be adhered to on rehearing that the decree appealed from should accordingly stand affirmed as the judgment of this Court. The views of these justices are stated in the opinion of Mr. Justice DAVIS filed herewith. Mr. Presiding Justice ELLIS and Mr. Justice BUFORD in whose conclusion Mr. Justice BROWN concurs, are of the opinion that the previous judgment of affirmance by this court should not be adhered to but that the decree should be reversed for further proceedings to be had in accordance with the opinion prepared on rehearing by Mr. Justice ELLIS and filed herewith.

The Supreme Court being equally divided in its opinion as to the proper judgment to be rendered in this cause on rehearing, as appears by the opinions and expressions of view herewith filed, the decree of the Circuit Court will be affirmed on rehearing on the authority of the rule enun-

ciated in State, *ex rel.* Hampton, v. McClung, 47 Fla. 224, 37 Sou. Rep. 51 and cases following same.

Affirmed on rehearing by equally divided court.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.

DAVIS, J.—I see no reason for now recanting from what we deliberately decided on the first appeal.

The bill below was filed by Arcadia Citrus Growers Association, a judgment creditor of the estate of James N. Hollingsworth, the defendant being the administratrix of said estate and it being alleged in the bill as the basis for the equity of it that because the defendant was the administratrix of the estate and was claiming adversely certain assets which complainant was entitled to reach as the assets of the estate of James N. Hollingsworth, that the controversy over the ownership of the disputed assets should be decided in equity. The disputed assets were moneys about to be paid in upon a note and mortgage and therefore capable of dissipation unless the defendant administratrix were immediately enjoined from such unlawful act.

Assets of a deceased debtor remain bound to unpaid creditors who pursue them wherever found, even into the hands of a legatee after distribution. This rule is not affected by the fact that without such pursuit the effects of the deceased debtor would have been sufficient to pay both debts and legacies, or in other words, by the fact that the estate was or was not insolvent. Davis v. Newman, 2 Rob. (Va.) 664, 40 Am. Dec. 764; Note 112 Am. St. Rep. 1022.

The complainant below was a judgment creditor and as such was entitled to have its judgment satisfied out of any assets that were the assets of the judgment debtor estate at the time its judgment was obtained. The purpose of the suit was to have it ascertained and established that the

assets here in controversy were not at any time the private assets of Mrs. Hollingsworth, the administratrix, as claimed by her. The case was presented and tried in the court below as a case of that description and nothing else. The Chancellor so characterized it in his final decree and we affirmed his decision on the original hearing because the resultant decree was simply a decree on the facts as to which we could not say that the Chancellor was clearly wrong.

The solvency or insolvency of the estate was not material on the question of complainant's right to a decree in favor of complainant when complainant succeeded in establishing that the administratrix was about to receive and convert to her own use, funds that belonged in fact to her deceased husband's estate, and which were therefore subject to an equitable garnishment in her hands after third parties had paid said funds over to her upon demand pursuant to her claim and pretense that she personally, and not in her capacity as administratrix, was entitled to have, receive and enjoy the same.

It seems to me that as a judgment creditor of the estate of J. N. Hollingsworth, deceased, as complainant, had the equitable right to file a bill to implead as defendant Mrs. Hollingsworth, *individually* and as administratrix, for the purpose of having adjudicated whether or not the funds she claimed as her own and which were about to be paid her, were or were not her own individual funds, and not funds of her husband's estate, and if found to be the latter, to have entered against Mrs. Hollingsworth, individually, a decree in the nature of an equitable garnishment of such funds as assets of the J. N. Hollingsworth estate in order that same might be applied for the purpose of satisfying the judgment of complainant against such estate. I there-

fore dissent from the holding that the bill of complaint was not sufficient to sustain the decree rendered in this case.

WHITFIELD, C. J., and TERRELL, J., concur.

ELLIS, P. J.—J. N. Hollingsworth and Juanita T. Hollingsworth were married in July, 1913. Mr. Hollingsworth was addicted to intemperate use of intoxicating liquors, which habit he began to form about June, 1919. He died in February, 1926. From the time he began the intemperate use of intoxicating liquors until the time of his death Mr. Hollingsworth at irregular intervals became drunk and for periods of time of varying duration passed through phases of intoxication from slight dethronement of his reason to unconsciousness and incapacity to control himself. When in such latter state he many times suffered accidents in some of which he received serious injuries and narrowly escaped being killed. In one such experience he received injuries from which he died.

When not under the influence of intoxicants Mr. Hollingsworth was a capable business man and by industry and frugality built up an estate of comparatively large value. His domestic relations were pleasant. His wife, helpful and frugal, contributed, in his estimation, greatly to the accumulation of his estate. In recognition of which and his duties to her, Mr. Hollingsworth contemplated providing for his wife's future, in the event of a fatal accident to himself and consequent untimely death by transferring to her a portion of his property.

In June, 1920, J. N. Hollingsworth sold to his brothers, A. F., J. L., and B. W. Hollingsworth, the former's interest in a herd of cattle. The three brothers to whom he sold the cattle constituted a partnership known as Hollingsworth Brothers. In payment for the cattle, the Hollingsworth

Brothers executed promissory notes aggregating in amount more than thirty thousand dollars. Those notes were secured by a mortgage executed to B. N. Welles, W. H. Seward and T. B. King, as Trustees. The notes and mortgage were dated October 25, 1923.

The Arcadia Citrus Growers Association, a Florida Corporation, in April, 1929, exhibited its bill of complaint against Juanita T. Hollingsworth, who had been appointed administratrix of her husband's estate, in both her representative and individual capacity, and against B. F. Welles, R. O. Turner and Elmer Garner, as Trustees. The bill alleges that the Hollingsworth Brothers' mortgage was foreclosed and the mortgaged property was bought by Welles, Turner and Garner, as Trustees for the creditors. The creditors authorized the Trustees to dispose of the property, which they did, and have on hand a large sum of money belonging to "said creditors," a large portion of which it is alleged belongs to the estate of J. N. Hollingsworth, deceased.

It is alleged that the trustees "are soon to pay out to the creditors one of whom is the estate of James N. Hollingsworth, fifteen per cent. on its claim against the said estate of James N. Hollingsworth," and from time to time the Trustees will make other collections from the sale of the property, and will pay out to Juanita T. Hollingsworth the moneys belonging to the estate of James N. Hollingsworth.

It is alleged that on February 25, 1926, J. N. Hollingsworth owed the complainant Arcadia Citrus Growers Association a large sum of money which was evidenced by promissory notes given by Hollingsworth. That the complainant's claim was reduced to judgment in March, 1928. That the judgment is for the sum of four thousand, five hundred and forty-nine dollars and seventeen cents and costs. It is

alleged that Hollingsworth died leaving a large estate, part of which consisted of an interest in the mortgage given by Hollingsworth Brothers to Welles, Seward and King, as Trustee; that such interest amounted to thirty thousand dollars.

The bill alleges that Juanita T. Hollingsworth claims that the money in the hands of Welles, Turner and Garner, as Trustees, belongs to her and not to the estate of her husband, and that she does not intend to use it for the payment of the "debts of the said estate." The complainant alleges that if Mrs. Hollingsworth receives the money from the Trustees and uses it for her personal needs the complainant will not be able to realize upon its judgment against the estate.

The bill alleges that Mrs. Hollingsworth has no interest in the funds in the hands of the Trustees and that she has never owned the notes which were given to James N. Hollingsworth and secured by the mortgage.

The bill alleges that the estate of James N. Hollingsworth is insolvent. That the Trustees intend to pay over the money in their hands to Mrs. Hollingsworth.

The bill prays that the money in the hands of the Trustees and now claimed by Juanita T. Hollingsworth be decreed to be the property of the estate of her husband and is subject to the payment of the complainant's judgment, that Mrs. Hollingsworth be enjoined from claiming the fund in the hands of the Trustees and that they be enjoined from paying it over to Mrs. Hollingsworth.

A demurrer to the bill by Mrs. Hollingsworth was overruled.

In July, 1929, Mrs. Hollingsworth answered the bill. The answer admits that she is administratrix of her husband's estate; that she has never been ordered to take charge of

the real estate of which her husband died seized and possessed; and her custody and management of the assets of the estate is confined to such possession as she has of the personal property of the estate, which is of a small amount and does not exceed $2870.00, in value. The complainant's judgment against her as Administratrix is admitted. The substance of the answer as to the fund alleged to be in the hands of the Trustees is that J. N. Hollingsworth had no interest in the Hollingsworth Brothers' mortgage at the time of his death nor in the notes which had been issued to him and secured by that mortgage because soon after the date of the notes and mortgage, which was in October, 1923, J. N. Hollingsworth endorsed and turned the notes over to the defendant to have and to hold in her own right as her individual property for her individual use and benefit.

It is averred that at that time Mr. Hollingsworth was not insolvent but was seized and possessed of ample means to meet all of his debts and obligations then existing.

The answer avers that when the Hollingsworth Brothers' mortgage was foreclosed for the use and benefit of the creditors, that Mrs. Hollingsworth as one of the beneficiaries of the trust individually and in her own right claimed the "fund arising from the foreclosure to the extent of said notes so endorsed, owned and held by her, and exhibited said notes and proved said claim in her own behalf and the same was allowed unto her" as the owner of the notes in her individual capacity and not as Administratrix, and that "under and by virtue of said decree in said foreclosure proceeding made and entered, she has been awarded, given and decreed and found entitled to the use and benefit of said funds as the holder and owner of said notes and now has full right, title and claim thereof and thereto individually and in her own right and for her own use and benefit."

In June, 1930, the Florida Trust and Banking Company intervened and answered the bill averring that J. N. Hollingsworth became indebted to the bank for money loaned and executed a mortgage upon property in Arcadia to secure the payment of the debt. That Hollingsworth was unable to pay the debt. That after the death of Hollingsworth the bank foreclosed its mortgage. The bank purchased the property which was the home place of the mortgagor and obtained a deficiency decree against the estate in the sum of twenty-eight hundred and fifty dollars.

A motion to strike portions of the bank's answer was overruled.

Mrs. Hollingsworth answered the bank's pleading which was in the nature of a bill for affirmative relief in which it also sought to participate in the funds held by the Trustees. The answer averred that there had been paid by Mrs. Hollingsworth to the bank one thousand dollars from her own funds, and separate estate; that more than two thousand dollars in improvement had been made on the property, all of which the bank had received the benefits of in acquiring the property at the sale. That it was agreed between her and the bank that the suit to foreclose would be of a "friendly nature" and principally to cure certain defects in the title to the property of which they both knew and that no deficiency decree would be taken against the estate, but that the deficiency decree was entered by "oversight and inadvertence." It is also averred that Mrs. Hollingsworth expressly and unmistakably stated that the notes held by her were her property and owned by her in her own right.

The answer sets out at length the details of the transaction with the Hollingsworth Brothers, and the endorsement of the notes to her by her husband, and at such time her

husband was not insolvent, and in the effort to collect the debts due by the Hollingsworth Brothers the bank participated with Mrs. Hollingsworth and knew that she claimed the notes as her individual and separate property.

It is averred that in the foreclosure proceedings of the Hollingsworth Brothers' mortgage to the Trustees, all of the creditors of Hollingsworth Brothers including Mrs. Hollingsworth and the bank were parties complainant, and Mrs. Hollingsworth asserted her claim as owner of "said five notes" as her individual property and it was decreed that the "said notes and the amount due thereon principal and interest was due unto her" in her own right and as her property.

The answer sets up fully the facts relating to the financial condition of J. N. Hollingsworth at the time of the foreclosure of the Hollingsworth Brothers' mortgage, showing his solvency and that the debt of the Banking Company accrued subsequently to the transfer to her of the Hollingsworth Brothers' notes. That the indebtedness to the Arcadia Citrus Growers Association consisted also of a merger of some small sum at a prior date with an indebtedness which occurred and accrued for money advanced to J. N. Hollingsworth long after the transfer of the notes by him to Mrs. Hollingsworth. And the claims of the creditors of J. N. Hollingsworth existing at the time of his death consisted of debts accruing against him subsequently to and not existing at the time of the transfer of the notes to her. That no execution ever existed on the decree in favor of the bank nor on the judgment obtained by the Arcadia Citrus Growers Association.

The answer contained a demurrer to the bill or answer of the bank.

On motion certain portions of the answer of Mrs. Holl-

ingsworth to the bank's claim *was* stricken. But the manner in which the record is made up and the unclear references to the parts stricken render it exceedingly difficult to identify them.

We have read the answer carefully, however, and are of the opinion that no part of it would be subject to the rather drastic procedure of striking it from the files. While the answer is unnecessarily prolix and contains much of the evidence by which the essential and ultimate facts averred would be established it cannot be said that the matter stricken served no purpose and had no bearing upon the merits of the controversy, and was wholly insufficient and had no bearing on the equities of the case. See: Pickard v. Brinkley, 89 Fla. 116, 103 So. 417; Holgate v. Jones, 94 Fla. 198, 113 So. 714; Busch v. Baker, 79 Fla. 113, 83 So. 704.

The method adopted by those following a certain school of practice requires a lengthy and detailed account of the transactions constituting the evidence of the matter which produces the controversy and oftentimes a construction upon the particular and several matters forming part of the whole controversy. In such case an answer which attempts to assert a different and less favorable construction to that asserted by the bill may not be said to be the subject of a motion to strike. The matter should be left by the chancellor to be considered in the making of an appropriate decree on the merits in accordance with equitable principles. See: Falsten Realty Co. v. Kirksey, 103 Fla. 225, 137 So. 267.

On September 11, 1931, the bank amended its affirmative answer by averring that it did on April 21, 1928, have issued out of the Circuit Court an execution upon the deficiency decree obtained by it and the Sheriff of DeSoto

County in December, 1930, returned the execution "unsatisfied." Which of course is not the equivalent of a "nulla bona" return.

A great deal of testimony was taken in the cause and on June 1, 1932, the Court found that the controversy in the case was over the ownership of five promissory notes of the Hollingsworth Brothers to J. N. Hollingsworth. That they were never given to Mrs. Hollingsworth. He also found that the judgment obtained by the Arcadia Citrus Growers Association was based upon a note dated in July, 1924, and that of the bank on a note dated in September, 1924, that both were renewal notes and had been due or running prior to the year 1923 and were unpaid at the time of the alleged gift, and the credit to Hollingsworth was extended on the faith of the interest which he had in the firm of Hollingsworth Brothers.

The Chancellor held that those notes constituted the principal part of the estate of J. N. Hollingsworth from 1923 to the date of his death. That he was heavily indebted to many persons including the complainant and the bank, and that much of Hollingsworth's property was during that time not subject to execution as the same was heavily encumbered and that he was insolvent in 1923 and subsequently thereto continuously to the date of his death. The Court then holds that the "said gift was null and void as the said J. N. Hollingsworth, Jr., was not in position at the time to make a gift of the corpus of his estate." The gift referred to the notes of Hollingsworth Brothers to J. N. Hollingsworth as to which in the first part of the decree the Court expressed the "opinion that the said notes were never given to the defendant."

The Court ordered and decreed that the funds in the hands of the Trustees should be utilized first to pay the

costs and then pay to the complainant and the bank, and that Mrs. Hollingsworth individually be enjoined from claiming the fund in the hands of the Trustees.

From that decree an appeal was taken and this Court on June 7, 1934, affirmed the decree. See foregoing opinion, page 90, 165 So. 369.

On application of solicitors for Mrs. Hollingsworth a rehearing and reargument was granted. The case was reargued on October 10, 1934, before the Court sitting in a body.

The bill in this case was not framed upon the theory that at the time of the alleged transfer of the notes from J. N. Hollingsworth to his wife he was indebted and insolvent and therefore such transfer of the notes was a fraud upon his creditors, but it was framed upon the theory that the estate being insolvent when the suit was brought those notes constituted at the time of his death a part of his estate which was alleged to be a "large estate." That Mrs. Hollingsworth who was administratrix asserted a claim to the ownership of the Hollingsworth Brothers notes and that if the money in the hands of the Trustees should be paid over to her on account of the Hollingsworth Brothers indebtedness as represented by their notes she would not use it to pay the debt due by the estate to the Arcadia Citrus Growers Association, the Complainant, but would use the money for her individual purposes and that by so doing she intends to "defraud and defeat" the complainant in the collection of its judgment.

In the opinion of this Court as rendered and filed June 7, 1934, *supra,* the view was expressed that the question raised by the demurrer upon this phase of the case was one of equitable cognizance notwithstanding Section 5647, *et seq.,* Compiled General Laws, 1927.

It is the view of the writer of this opinion that Section 5647, *et seq.,* C. G. L. 1927, affords in such cases as described by the bill an adequate statutory remedy where the Administrator files a written suggestion on oath, in the office of the County Judge, of the estate's insolvency. The statute makes it the duty of the Administrator to file such suggestion when he believes the estate to be indebted to an amount greater than the value of the estate.

In Holliday v. McKinne, 22 Fla. 153, it was held that the method prescribed for ascertaining the insolvency is exclusive.

I do not regard the case of Benedict v. Wilmarth, 46 Fla. 535, 35 So. 84, as authority for the theory on which the bill in this case was framed. In that case a widow as one of the executors of the will of her deceased husband filed a bill to establish her right to dissent from the provisions of the will and to elect to take a child's part in the estate. There was no controversy between her and the creditors as to whether property claimed by her as her own individual and separate property belonged in fact to the estate.

The bill in this case does not allege that Mrs. Hollingsworth as Administratrix of the estate has refused to file the suggestion of insolvency. From any allegation in the bill to the contrary, the Administratrix may believe the estate to be of greater value, than the amount of the debts alleged. by the bill to be due the complainant and other creditors.

At common law the creditors of a person who has died may resort to equity against the Administrator of his estate to compel an account of the assets of the estate, to discover and set them forth and show the application the Administrator has made of them. Courts of equity exercise jurisdiction over executors and administrators in the adminis-

tration of assets of an estate to compel them in the due execution of their trusts to apply the property to the payment of creditors and legatees. More especially is this true when the Administrator claims a portion of this property alleged by creditors to belong to the estate and the claim of the Administrator is adverse to the interest of the creditors. See: 7 American and English Encyclopedia of Law 400; 18 Cyc 910; 23 C. J. 1183, Smith's Equitable Remedies of Creditors 154.

In such case the suit must be for the benefit of all creditors or parties in interest, because the purpose is to reach a fund primarily liable for the payment of the debts of intestate. See: Smith's Equitable Remedies of Creditors 107; McFarlan v. McFarlan, 155 Mich. 652, 119 N. W. 1108.

The Statute Section 5647, *et seq.*, C. G. L., *supra*, was designed to supplement the rule above stated, but it does not supersede it but leaves the rule available in cases like the one at bar where the claim of the Administrator to the property in question is adverse to the creditors and the Administrator declines to make the suggestion of insolvency contemplated by the statute.

The bill should have alleged that Mrs. Hollingsworth as Administratrix knew that the estate was insolvent but refused to file the suggestion required by the statute. It would seem that the Administrator should be given an opportunity to contest that point and to show that the estate was not less in value than the amount of its indebtedness.

Our statutes upon the subject of administrators and executors from the qualification and appointment of legal representatives to the provisions applicable to settlement by the court sections 5521 to 5659 C. G. L. 1927, are very full and complete. A bond is required of the Administrator, respect being paid to the value of the estate, Section 5534 C. G. L.

Annual settlements are required, Section 5546, C. G. L.; provision for the removal of the Administrator is made, Section 5560 C. G. L.; provisions for appraisement and inventory, Section 5592 C. G. L.; notice to creditors, Section 5597, C. G. L.; presentation of claims by creditors; Section 5599 C. G. L.; order in which the debts shall be paid, Section 5610 C. G. L.; presentation of claims and effect of non-claim are provided for, Section 5611 C. G. L.; sales of personal and real property are regulated, Sections 5624 to 5643 C. G. L.; and it is expressly provided that where a creditor obtains a judgment or decree for his claim when the same is denied or contested by the Administrator the decree or judgment shall be filed with the judge for pro rata payment as other claims are required to be filed, Section 5654, C. G. L.

In all the above provisions the creditors are protected and provision made for them to be heard.

So when a creditor decides to apply to a court of equity for an accounting by an Administrator and listing of property claimed by him as his own which the creditor claims belongs in fact to the estate and the Administrator's claim is alleged to be antagonistic or injurious to the interests of the creditor, the latter should allege in his bill not only that he has complied with the law in the matter of filing his claim to show that it is not affected by this statute of non-claim but should by appropriate allegations show the failure of the Administrator to comply with his duty in the matter of the correct listing of the properties of the estate, the proper valuation thereof by the appraisers, the insolvency of the estate, the knowledge thereof by the administrator and his refusal to comply with the statute requiring the suggestion of insolvency.

On these questions the Administrator is entitled to a hear-

ing. In many of these particulars the bill of complaint is deficient. It is in its last analysis only an attempt to garnish the Trustees and subject money in their hands to the payment of claims which they assert constitute valid debts against the estate.

·The bill seeks no relief from a fraudulent transfer of property by an insolvent debtor nor from the effect of a voluntary transfer of property with intent to hinder or delay creditors in the collection of their just demands. There are wanting in the bill some of the necessary elements of a general creditor's bill. The decree of the Chancellor rests upon the proposition that the transfer of the notes by Hollingsworth to his wife was a voluntary transfer made by Hollingsworth at a time when he was insolvent, that it was therefore a fraud upon his creditors whose demands were made in the faith and upon the credit of Hollingsworth's ownership of the notes so fraudulently transferred and therefore the transaction was a fraud upon his creditors and the proceeds from the collection of such notes are subject to the payment of the complainant's demand.

After duly considering the argument of counsel upon a rehearing of the decision rendered in this case on June 7, 1934, three members of the court are of the opinion that said decision and opinion should be receded from, that the Chancellor's final decree be reversed and that the order overruling the demurrer to the bill should be reversed, with leave to the complainant to amend its bill of complaint.

BUFORD, J., concurs.

BROWN, J., concurs in the conclusion.

### ON PETITION FOR A FURTHER REHEARING

PER CURIAM.—J. N. Hollingsworth died in February, 1926, indebted to the Arcadia Citrus Growers Association

in the sum of $4,549.17, Juanita T. Hollingsworth was duly appointed Administratrix of the estate of J. N. Hollingsforth and in March, 1928, the Arcadia Citrus Association reduced its claim to judgment against her as such. The Florida Trust and Banking Company also held a claim against J. N. Hollingsworth at the time of his death and subsequently reduced its claim to judgment against the Administratrix.

In April, 1927, the Arcadia Citrus Growers Association filed a bill against Juanita T. Hollingsworth individually and as Administratrix of the estate of J. N. Hollingsworth, and B. F. Wells, R. O. Turner, and Elmer Garner as Trustees, seeking to subject the proceeds of certain promissory notes held by said trustees for the estate of J. N. Hollingsworth to the payment of its judgment. The Florida Trust and Banking Company was permitted to intervene and become a party complainant to the bill.

A demurrer to the bill was overruled, answer was filed and on final hearing the Chancellor found the equities to be with complainant. A final decree was entered in which the trustees were directed to pay the costs of the litigation and to appropriate the balance of the proceeds of the promissory notes held by them to the payment of the complainant's and intervenor's judgments.

It was the contention of Mrs. Hollingsworth that the notes were given to her by her husband, J. N. Hollingsworth, in October, 1923. She is supported in this position by the testimony of other witnesses, although there is substantial testimony to the contrary and the record shows beyond question that in 1923 when the notes were alleged to have been given to her, J. N. Hollingsworth was hopelessly involved and was indebted far beyond his ability to pay. In the face of the hopeless conflicts in the testimony the

Chancellor held that the notes were never given to Mrs. Hollingsworth. by her husband, who, as an honest man, could not have so disposed of the notes under the circumstances.

Whether the proceeds of the notes in controversy were a part of the estate of J. N. Hollingsworth at the time he died, or whether they belonged to his wife, Juanita T. Hollingsworth, at the time of his death was the question decided by the Chancellor. This Court in a Per Curiam opinion filed June 7, 1934, held that this was a case of equitable cognizance and sustained the Chancellor in his decision that the notes were the property of the estate of J. N. Hollingsworth, and therefore subject to the payment of the complainants' and intervenors' judgments.

In appellant's first petition for rehearing, which was granted, she alleged that the Court failed to note that there was no allegation or averment in the appellee's pleadings charging the insolvency of the said J. N. Hollingsworth, nor any allegation of fraudulent transfer, and no allegation of a transfer of any kind, but simply an allegation that no transfer of any nature had been made by the said J. N. Hollingsworth to his said wife; that no relief was sought as for a fraudulent transfer; that the suit was not a creditors bill; that the lower court's judgment was based upon evidence insufficient to show fraudulent transfer and that such decree was predicated upon a bill of complaint that made no averment of fraudulent transfer. It was further the petitioner's contention that in view of complainants' bill evidence of Hollingsworth's insolvency should not have been allowed nor objection to such evidence overruled; that the evidence did not support any allegation of the bill as framed and that there was no testimony under the allegations of the bill to support the decree rendered, nor any conflict in

the evidence as to the endorsement and trnasfer of the notes in the decree mentioned, by J. N. Hollingsworth in his lifetime to Juanita T. Hollingsworth. It was further argued that conceding the contrary, that creditors were not hindered or delayed, and that the transfer not being assailed until long after the transferor's death, the assignment should prevail as against creditors.

Upon the above grounds and influenced by the above considerations, the court granted a rehearing. On that rehearing this Court found themselves equally divided in opinion as to whether the decree of the Circuit Court should be affirmed or reversed.

Mr. Chief Justice WHITFIELD, Mr. Justice TERRELL and Mr. Justice DAVIS were of the opinion that the judgment of affirmance of this Court previously entered should be adhered to. Supporting that view, Mr. Justice DAVIS filed an opinion in which he said: "I see no reason for now recanting from what we deliberately decided on the first appeal," and in another place: "The purpose of the suit was to have it ascertained and established that the assets here in controversy were not at any time the private assets of Mrs. Hollingsworth, the administratrix, as claimed by her. The case was presented and tried in the court below as a case of that description and nothing else. The Chancellor so characterized it in his final decree and we affirmed his decision on the original hearing because the resultant decree was simply a decree on the facts as to which we could not say that the Chancellor was clearly wrong." He closed his opinion by saying that: "I therefore dissent from the holding that the bill of complaint was not sufficient to sustain the decree rendered in this cause."

Mr. Justice ELLIS, Mr. Justice BROWN and Mr. Justice BUFORD thought the decree should be reversed on rehear-

ing, Mr. Justice Ellis comprehensively reviewing the facts of the case and coming to the conclusion that the notes were given to Mrs. Hollingsworth by her husband and therefore under the allegations of the bill the decree of the Chancellor should be reversed. Mr. Justice Ellis further found that J. N. Hollingsworth was addicted to the intemperate indulgence in intoxicating beverages, and in recognition of his duties to his wife, contemplated providing for her future by the gift of the notes, realizing that he was dissipating his assets in riotous living and wishing to provide for her in the event that he died insolvent. He further stated his view to be that when the Hollingsworth Brothers' mortgage was foreclosed for the use and benefit of the creditors of J. N. Hollingsworth, that Mrs. Juanita Hollingsworth was entitled to claim the fund arising from said foreclosure to the extent of the notes so endorsed to and held by her and proved, and to have the same allowed to her. In this connection, Mr. Justice Ellis stated: "The bill seeks no relief from a fraudulent transfer of the property by an insolvent debtor nor from the effect of a voluntary transfer of property with intent to hinder or delay creditors in the collection of their just demands. There are wanting in the bill some of the necessary elements of a general creditor's bill. The decree of the Chancellor rests upon the proposition that the transfer of the notes by Hollingsworth to his wife was a voluntary transfer made by Hollingsworth at a time when he was insolvent, that it was therefore a fraud upon his creditors whose demands were made in the faith and upon the credit of Hollingsworth's ownership of the notes so fraudulently transferred and therefore the transaction was a fraud upon his creditors and the proceeds from the collection of such notes are subject to the payment of the complainant's demand." Mr. Justice Buford concurred in that statement.

The case is now before this Court on a petition for its second rehearing. This second petition alleges that under the pleadings in said cause as framed and the issues presented thereby, the solvency or insolvency of J. N. Hollingsworth was never an issue in the case and that there was no evidence to support the decree that Juanita Hollingsworth did not own the notes in question, although the averments of complainant's bill and the issue presented by the pleadings cast upon the complainant the burden of establishing by the evidence that the defendant never at any time owned the said notes in question; further that there is not a scintilla of evidence to sustain a finding that the notes were not in fact assigned by her husband to Mrs. Hollingsworth, whether assigned in fraud of creditors or not.

An appeal in equity from a final decree is substantially a rehearing of the cause and opens the whole case for consideration, even as to questions passed, *sub silentio,* at the hearing before the Chancellor. Smith v. Croom, 7 Fla. 180; Parker v. Saffold, 48 Fla. 290, 37 Sou. Rep. 567. And where a decree has been rendered in a chancery cause, but a material point of proposition in controversy is left uncertain in the pleadings, or in the evidence so that it affirmatively appears that a more complete development of the rights of the parties under the law can and should be made in such pleadings or in the evidence in order that full justice may be done in arriving at a correct decision of the real points in controversy, the final decree appealed from may be vacated without prejudice, and the cause thereupon remanded, with directions to allow any and all appropriate amendments to the pleadings and to permit the taking of such further testimony as justice and equity may require in view of the existing uncertainties. Kurz v. Pappas, 107 Fla. 861, 146 Sou. Rep. 100, 147 Sou. Rep. 271; Wilkins v.

Bank of Commerce, 95 Fla. 85, 116 Sou. Rep. 13, Fleischer v. Virginia-Carolina Chemical Co., 82 Fla. 50, 89 Sou. Rep. 401; Graham v. Florida Land & Mtge. Co., 33 Fla. 56, 14 Sou. Rep. 796; Chapman v. St. Stephens Protestant Episcopal Church, 105 Fla. 683, 136 Sou. Rep. 238, 138 Sou. Rep. 630, 139 Sou. Rep. 188, 145 Sou. Rep. 757; Foster v. Thornton, 119 Fla. 49, 160 Sou. Rep. 490, and similar cases.

In view of the irreconcilable differences of opinion which may appear to exist amongst the members of this Court as to the exact character, nature and scope of the controversy presented by the pleadings and adjudicated by the Chancellor in the decree appealed from, it seems to a majority of the Court that it is now appropriate to grant a further rehearing in this case, reverse and vacate the final decree appealed from without prejudice and without costs to either party, and thereupon remand the cause to the Circuit Court for reconsideration and rehearing after the making of such appropriate amendments to the pleadings and the presentation of such further evidence in the case, as the parties may desire, within a reasonable time therefor to be fixed by the Circuit Court, and that other and further proceedings be had in this cause thereafter as shall be conformable to justice and equity in the premises.

It is ordered accordingly.

WHITFIELD, C. J., and ELLIS, BROWN, BUFORD, and DAVIS, J. J., concur.